J-A27037-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
SOCRATES RUDY CLARK :
:
Appellant : No. 2784 EDA 2024

Appeal from the Judgment of Sentence Entered September 10, 2024
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0007209-2023

BEFORE: BOWES, J., MURRAY, J., and BECK, J.

MEMORANDUM BY BECK, J.: **FILED JANUARY 5, 2026**

Socrates Rudy Clark ("Clark") appeals from the judgment of sentence entered by the Montgomery County Court of Common Pleas ("trial court") after a jury convicted him of persons not to possess firearms and firearms not to be carried without a license.[1]  Clark argues that the trial court erred in denying his motion for a mistrial based on his allegations of prosecutorial misconduct that allegedly occurred during closing arguments.  Finding no abuse of discretion in the trial court's decision to deny Clark's request for a mistrial, we affirm.

On November 24, 2023, at around 4:45 p.m., multiple officers from the Upper Moreland Township Police Department responded to the All Night Deli

_____

[1]  18 Pa.C.S. §§ 6105(a)(1), 6106(a)(1).

on Easton Road in Willow Grove after customers reported an incident involving a man with a firearm in the deli. Specifically, Clark and James Yannatelli ("Yannatelli") engaged in a verbal altercation after which Yannatelli claimed that Clark lifted his shirt to reveal the handle of a gun sticking out from the waistband of his pants. Dean Nuss ("Nuss") witnessed the interaction between Yannatelli and Clark. Although Nuss did not see Clark's firearm, he stated that Clark offered to sell him what he believed to be drugs.

After police arrived at the deli and detained Clark for questioning, an officer recovered a firearm and two bags of controlled substances in a nearby alley. Detective Francis Gallagher was one of the members of the police department who responded to the scene and the investigating detective on Clark's case. Forensic testing showed the presence of Clark's DNA on the firearm. The record also reveals that Clark has three prior felony convictions.

On June 18, 2024, following a two-day trial, the jury found Clark guilty of the above-referenced offenses.[2] On September 10, 2024, the trial court sentenced Clark to an aggregate term of four to eight years in prison. Clark did not file any post-sentence motions. On October 8, 2024, he timely appealed to this Court. Clark presents the following issues for review:

> 1) Whether the [trial court] erred when it denied [Clark]'s motion for a mistrial when the prosecutor stated that "I don't think there was any part that was lying when he said" with regard to [Yannatelli]'s testimony in her closing argument?

---

[2] The jury acquitted Clark of one count of possession of a controlled substance.

2)    Whether the [trial court] erred when it denied Clark's motion for a mistrial when the prosecutor stated that "he's trying to say that there's a conspiracy for that he has offered no proof or motive" in her closing argument?

Clark's Brief at 8 (unnecessary capitalization omitted).

The issues Clark raises on appeal are related, and we therefore address them together.  Clark argues that the trial court abused its discretion in denying his motion for a mistrial based on two acts of prosecutorial misconduct.  **See** Clark's Brief at 15-18.  First, Clark contends that the prosecutor improperly gave her opinion regarding Yannatelli's testimony at trial, stating that he was credible.  **Id.** at 15-16.  Clark maintains that such a comment was inappropriate because he had not first attacked Yannatelli's credibility.  **Id.**  Second, Clark argues that the prosecutor improperly placed a burden of proof on him when she stated that he had argued about the existence of a conspiracy and that the police were trying to frame him for his crimes, and that Clark had no evidence that such a conspiracy existed.  **Id.** at 16-17.  Clark asserts that these remarks were improper because he had no burden to prove anything at trial and that he only accused Detective Gallagher of wrongdoing, whereas a conspiracy requires the involvement of more than one person.  **Id.**

An appellate court will not overturn a trial court's denial of a mistrial absent an abuse of discretion.  **Commonwealth v. Leap**, 222 A.3d 386, 392 (Pa. Super. 2019).  "A mistrial is an extreme remedy that is appropriate only

where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." *Id.* (quotation marks and citation omitted).

When reviewing a motion for mistrial based upon prosecutorial misconduct, we have held that "not every inappropriate remark by a prosecutor constitutes reversible error[;]" rather, prosecutorial misconduct occurs only when "the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict." *Commonwealth v. Noel*, 53 A.3d 848, 858 (Pa. Super. 2012) (quotation marks and citation omitted). "[A] prosecutor has considerable latitude during closing arguments and his or her statements are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence." *Id.* In reviewing a trial court's determination to deny a mistrial, we recognize that "[t]he trial court is in the best position to assess the effect of an allegedly prejudicial statement on the jury[.]" *Commonwealth v. Rega*, 933 A.2d 997, 1016 (Pa. 2007) (citation omitted).

"With specific reference to a claim of prosecutorial misconduct in a closing statement, it is well settled that [i]n reviewing prosecutorial remarks to determine their prejudicial quality, comments cannot be viewed in isolation

but, rather, must be considered in the context in which they were made." *Commonwealth v. Santiago-Burgos*, 314 A.3d 535, 547 (Pa. Super. 2024). (quotation marks and citation omitted). "The appellate courts have recognized that not every unwise remark by an attorney amounts to misconduct or warrants the grant of a new trial." *Commonwealth v. Jones*, 191 A.3d 830, 835 (Pa. Super. 2018) (citation omitted). "Additionally, … the prosecution is accorded reasonable latitude, may employ oratorical flair in arguing its version of the case to the jury, and may advance arguments supported by the evidence or use inferences that can reasonably be derived therefrom." *Id.* (citation omitted). Furthermore, "the prosecutor is permitted to fairly respond to points made in the defense's closing, and therefore, a proper examination of a prosecutor's comments in closing requires review of the arguments advanced by the defense in summation." *Id.* at 835-36 (citation omitted). "Our review of a prosecutor's comment and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial." *Commonwealth v. Jaynes*, 135 A.3d 606, 615 (Pa. Super. 2016).

Additionally, if the trial court provides a cautionary instruction to address the alleged prejudice, we presume that the jury followed the instruction. *Leap*, 222 A.3d at 392. Where the instruction is adequate, the grant of a mistrial is not necessary. *Id.*

The first comments to which Clark objected were as follows:

[Prosecutor]: You watched as witness after witness came up here, starting with Jimmy Yannatelli, who, again, told you -- I don't think there was any part that was lying when he said, "Yeah, we were --"

[Trial Counsel]: Objection.

N.T., 6/18/2024, at 185. Clark claims that the prosecutor improperly opined as to Yannatelli's credibility. **See** Clark's Brief at 15-16.

The trial court rejected this claim and explained:

Instantly, during [Clark]'s closing argument, defense counsel made several comments concerning the credibility of witness [Yannatelli]'s testimony, twice suggesting either he or another witness was lying. After implying that [Yannatelli] may have lied, defense counsel asked the jury "how reliable is the testimony that [Yannatelli] gave, particularly when it is inconsistent with the testimony of Mr. Nuss?" [The prosecutor]'s comment that "[she did not] think that there was any part that was lying when [Yannatelli] said," was a fair response to defense counsel's attacks on [Yannatelli]'s credibility and did not deny [Clark] a fair trial. Moreover, [the prosecutor] continued by reminding the jury that they saw the evidence and heard the testimony and that they were the judges of the witnesses' credibility. The court also instructed the jury on witness credibility and conflicts in testimony.

Trial Court Opinion, 3/14/2025, at 9-10.

The record supports the trial court's findings. It reflects that during closing arguments, Clark's counsel on several occasions suggested that Yannatelli was lying, questioned his reliability, and noted that his testimony was inconsistent with the testimony of another witness. **See** N.T., 6/18/2024, at 175, 183. While it is generally improper for the prosecutor to express a personal opinion or belief regarding the credibility of the defendant or witnesses, this Court has explained that "[i]f defense counsel has attacked the

credibility of witnesses in closing, the prosecutor may present argument addressing the witnesses' credibility." ***Santiago-Burgos***, 314 A.3d at 548 (citation omitted). Thus, the prosecutor's statement indicating that she did not believe Yannatelli to be lying was a fair response to defense counsel's attack on Yannatelli's credibility. ***See id.***; ***see also*** N.T., 6/18/2024, at 185. Furthermore, the trial court expressly instructed the jury that it was "the sole judgment of the credibility of witnesses and their testimony," and we must presume that they followed that instruction. N.T., 6/18/2024, at 207; ***see also Leap***, 222 A.3d at 392.

Accordingly, the record supports the trial court's determination that the prosecutor's remarks regarding Yannatelli's credibility were a fair response to defense counsel's attack on his credibility. We therefore conclude that the trial court did not abuse its discretion in denying Clark's request for a mistrial based on this claim of prosecutorial misconduct.

The second comment to which Clark objected was that "[defense counsel is] trying to say that there's a conspiracy that he has offered no proof or motive for." N.T., 6/18/2024, at 195. Clark argues that this comment was inappropriate because he never asserted the existence of a conspiracy and it improperly placed a burden on him to prove there was a conspiracy. ***See*** Clark's Brief at 16-17.

In rejecting this claim, the trial court explained:

All during the trial and in [Clark]'s closing argument, defense counsel implied that law enforcement, and Detective Francis

- 7 -

Gallagher, Jr. in particular, could have planted the gun, could have placed [Clark]'s DNA on the gun before swabbing it, could have exchanged guns, and that officers and other witnesses lied. Defense counsel first brought up the fact that he did not have a motive for these "possibilities" and that he could not prove it. [The prosecutor]'s comments that this was not a conspiracy and she had not heard any reason why person after person would come in, take an oath and lie just to say it was [Clark] was also a fair response to defense counsel's closing and did not deny [Clark] a fair trial. Moreover, [the prosecutor] continued by telling the jury that the Commonwealth had the burden to prove every element of the offenses charged beyond a reasonable doubt. The court instructed the jury, inter alia, on direct and circumstantial evidence, the presumption of innocence and burden of proof, and that argument by attorneys is not evidence.

Trial Court Opinion, 3/14/2025, at 10.

The record reflects that defense counsel specifically accused Detective Gallagher of planting Clark's DNA on the gun and stated the following:

Now, it doesn't matter whether you believe that evidence may have been planted or not. It doesn't matter if you believe that everything that the Commonwealth told you is true. It doesn't matter. What matters is -- ultimately -- is whether you believe that it's possible. Because if you can't decide guilt or innocence without thinking about the possibility that there has been evidence that was planted by this detective, who had sole control of everything, and then -- and, again, chose not to do fingerprints -- I submit to you because he knew that he wouldn't find any. Why else couldn't you do the fingerprint tests?

Do I have a motive? No. I don't know that there is any personal animosity between the detective and my client; I can't prove it. But, again, I'm only saying that it happened. I'm only saying that it's possible that it happened. And if you have to pause long enough to decide whether it's possible that evidence was planted, and that my client is not guilty, then you must find that there's reasonable doubt.

N.T., 6/18/2024, at 180-81.

- 8 -

While Clark is correct that Detective Gallagher is the only member of the police department that defense counsel specifically accused by name of wrongdoing, he overlooks that Detective Gallagher was not the only police officer who responded to the scene and that defense counsel also complained about more than Detective Gallagher's handling of the investigation. *See, e.g., id.* at 176-81 (defense counsel identifying the police officers' allegedly inconsistent statements about the description of Clark's gun and their handling of fingerprint and DNA evidence); *see also* N.T., 6/17/2024, at 44. Defense counsel dedicated a significant portion of his closing argument asserting, at least impliedly, if not directly, that the police acted in concert to frame Clark for his crimes. *See* N.T., 6/18/2024, at 176-81. Thus, the prosecutor's statement regarding the absence of the existence of a conspiracy was also a fair response to statements defense counsel made in his closing argument. *See Jones*, 191 A.3d at 836; *see also* N.T., 6/18/2024, at 195. Likewise, we do not find that the prosecutor's remarks in this respect had the unavoidable effect of prejudicing the jurors and forming in their minds a fixed bias and hostility toward Clark, thus impeding their ability to weigh the evidence objectively and render a true verdict. *See Noel*, 53 A.3d at 858. Furthermore, the trial court correctly instructed the jury that it was the Commonwealth that had the burden to prove all elements of each crime for which Clark was charged beyond a reasonable doubt and that Clark possessed no burden to prove anything. N.T., 6/18/2024, at 216-17. We also note that

Clark was not charged with conspiracy, the jury was not instructed on that crime, and there was no basis for the jury to become confused as to the burden of proof as to the crimes charged.

The record supports the trial court's determination that the prosecutor's remarks regarding the lack of an existence of a conspiracy were a fair response to defense counsel's comments during closing and that the trial court alleviated any potential problems with respect to those comments in its charge to the jury. We therefore conclude that the trial court did not abuse its discretion in denying Clark's request for mistrial based on his second claim of prosecutorial misconduct.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>1/5/2026</u>